ISABELLA MARINE HOLDING, LLC,

    Plaintiff,

v.

JOHN PURCELL, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON
## MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendants Marine Tech Key West, Inc. ("Marine Tech") and John Purcell ("Purcell") filed a motion to enforce a settlement agreement (the "motion"). [ECF No. 85]. Problems with the alleged settlement agreement ensued after Plaintiff Isabella Marine Holding, LLC ("Plaintiff") allegedly failed to sufficiently return fishing rods and reels to Defendants. [ECF No. 85, p. 3]. United States District Judge Jose E. Martinez referred Defendants' motion to the Undersigned. [ECF No. 86].

The issue of whether fishing rods were returned is seemingly straightforward. However, after Defendants filed their motion, this case entered troubled waters, or, more accurately, entered unnecessarily cumbersome seas surrounding the procedural map. Although the Undersigned would like to jettison overboard the flux of

unresponsive and deficient filings that ensued, as the Captain of this Report, I must sail on.

Upon review of the motion, the related filings, and the record, for the reasons stated below, the Undersigned **respectfully recommends** that the District Court **deny** Defendants' motion and enter a **default** against Marine Tech.

I.   BACKGROUND

In August 2015, Plaintiff filed its complaint in a Florida state court. [ECF No. 1-1]. Plaintiff's complaint sought damages for breach of contract and injunctive relief arising from Defendants' alleged failure to perform adequate repairs on Plaintiff's vessel. [ECF No. 1-1]. Defendants then timely removed this case to federal court and asserted original admiralty jurisdiction under 28 U.S.C. § 1333. [ECF No. 1, p. 2].

On October 27, 2016, six days after Defendants filed their motion, attorney R. Bruce Wallace moved to withdraw as counsel for Defendants Marine Tech and Purcell. [ECF Nos. 87; 88]. On December 19, 2016, Mr. Wallace filed another motion to withdraw as counsel for Counterclaimants Marine Tech and Purcell. [ECF No. 96].

On October 31, 2016, Plaintiff moved for an extension of time to respond to Defendants' motion to enforce the settlement agreement. [ECF No. 89]. On December 28, 2016, the Undersigned granted Plaintiff's motion, giving Plaintiff until January 30,

2017, to respond to Defendants' motion to enforcement the settlement agreement. [ECF No. 99].

On December 28, 2016, the Undersigned also entered Endorsed Orders "granting [ECF Nos. 88; 96] Attorney Robert Bruce Wallace's Motion to Withdraw as Attorney for Defendants[/Counterclaimants] John Purcell and Marine Tech Key West Inc." [ECF Nos. 97; 100]. These Endorsed Orders required Marine Tech to retain substitute counsel by January 11, 2017. [ECF Nos. 97; 100]. The Endorsed Orders specified that "[s]ubstitute counsel must file an appearance by that deadline because Florida law requires a corporation to appear in court only by counsel. Attorney Robert Bruce Wallace should immediately provide a copy of this Endorsed Order to John Purcell and Marine Tech Key West Inc." [ECF Nos. 97; 100]. The Undersigned also denied as moot [ECF No. 87], the earlier-filed motion to withdraw, given the existence of another order [ECF No. 97] affording the same relief. [ECF No. 98].

All parties failed to comply with the Undersigned's Endorsed Orders. Therefore, on February 2, 2017, the Undersigned entered two Endorsed Orders to Show Cause. [ECF Nos. 102; 103].

The first Show Cause Order was directed at Marine Tech, who was required "to show cause in writing by February 8, 2017" why it had "not complied with the Court's Orders requiring it to obtain substitute counsel by January 11, 2017 (D.E. 97) and (D.E

3

100)." [ECF No. 102]. The Show Cause Order stated that "[i]f new counsel does not appear and if good cause is not shown for the failure to comply, then the Undersigned will recommend that United States District Judge Jose E. Martinez enter a default against it and deny its motion to enforce the settlement agreement (D.E. 85)." [ECF No. 102].

The second Show Cause Order was the flip side of the first Show Case Order. It required *Plaintiff* "to show cause in writing, by February 8, 2017, why it has not complied with the Court's Order giving it until January 30, 2017 to respond to Defendants' motion to enforce the settlement agreement (D.E 99)." [ECF No. 103]. The second Show Cause Order further specified that "[i]f good cause is not shown, then the Undersigned will recommend that United States District Judge Jose E. Martinez grant by default Defendant John Purcell's motion to enforce the settlement agreement (D.E. 85)." [ECF No. 103].

On February 15, 2017, former counsel to Defendants, R. Bruce Wallace, filed a response, explaining that Marine Tech may not have received notice of the Undersigned's first Show Cause Order [ECF No. 102] until just before the Order's imposed deadline. [ECF No. 104]. Therefore, on February 15, 2017, in an abundance of caution, the Undersigned renewed the first Show Cause Order and required Marine Tech "to show cause in writing by March 1, 2017 why it has not complied with the

4

Court's Orders requiring it to obtain substitute counsel by January 11, 2017 (D.E.97) and (D.E 100)." The renewed Show Cause Order also stated that "[i]f new counsel does not appear and if good cause is not shown for the failure to comply, then the Undersigned will recommend that United States District Judge Jose E. Martinez enter a default against it and deny its motion to enforce the settlement agreement (D.E. 85)." [ECF No. 105].

However, Marine Tech never responded to the renewed Show Cause Order and never obtained substitute counsel. Purcell has also failed to indicate if he plans to proceed *pro se* or plans to obtain substitute counsel.

On February 15, 2017, Plaintiff filed a late, allegedly verified response to the Undersigned's second Show Cause Order. [ECF No. 106]. On May 8, 2017, the Undersigned struck Plaintiff's response [ECF No. 106] to the Undersigned's second Show Cause Order based on lack of verification and gave Plaintiff until May 10, 2017 to re-file it. [ECF No. 110]. On this same day, the Undersigned entered another order requiring Plaintiff to file, by May 15, 2017, its substantive response to Defendants' motion to enforce the settlement agreement. [ECF No. 111]. On May 10, 2017, Plaintiff refiled its verified response, and on May 15, 2017, Plaintiff filed its response to Defendants' motion to enforce the settlement agreement. [ECF Nos. 114; 115].

## II. ANALYSIS

<u>Choice-of-law Analysis</u>

Before the Undersigned can make a recommendation, I must first determine the applicable law governing the contract principles at issue. Although none of the parties cited any case law regarding which law governs a dispute concerning an effort to enforce the settlement agreement, or, for that matter, any case law supporting or opposing Defendants' motion, the fact remains that the ultimate recommendation depends on this determination. Thus, the Undersigned must perform a choice-of-law analysis to reach an equitable and justified conclusion about Defendants' motion.

When a case is in federal court based on admiralty jurisdiction, like here, federal maritime, conflict-of-laws principles control. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161–62 (11th Cir. 2009). To determine whether federal common law or state law governs a contract's interpretation, federal courts must examine the nature of the contract at issue. *Arch Ins. Co. v. NCL (Bahamas), Ltd.*, No. 11-20577-CIV, 2012 WL 4896045, at *2 n. 2 (S.D. Fla. Oct. 15, 2012). The Supreme Court answered the question when it explained, "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23, (2004).

In accordance with these principles, the Eleventh Circuit performs a choice-of-law analysis in maritime contract cases based on the Second Restatement of Conflicts of Law, Section 188. *See Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1382 (11th Cir. 2006). When conducting the Restatement's choice-of-law analysis, a court must determine which forum has the most significant relationship with the transaction at issue. *Id.* The Restatement factors include: "(a) the place of contracting; (b) the place of negotiation; (c) the place of performance; (d) the locus of the subject matter of the contract; and (e) the domicile of the parties." *Id.* (quoting Restatement (Second) Conflicts of Law § 188(2)).

Based on the parties' filings, it appears that the settlement agreement, if one exists, was allegedly entered into, negotiated, performed (or breached) in Florida. [ECF Nos. 85; 114; 115]. It also appears from the complaint that the settlement agreement arose from a dispute regarding the repair work Defendants performed on Plaintiff's vessel. [ECF No. 1-1, p. 2]. The repairs performed on the vessel occurred at the vessel's location in Florida. [ECF No. 1-2, p. 2]. The exchange of rods and fishing gear at issue in Defendants' motion also occurred in Florida. [ECF No. 85]. Furthermore, the parties are all domiciled in Florida. [ECF No. 1-2, pp. 2-3]. Therefore, every factor favors Florida law governing the outcome of Defendants' motion to enforce the settlement agreement. Accordingly, the Undersigned will apply Florida law.

7

No Settlement Agreement to Enforce

Settlement agreements are favored in Florida and are enforced by courts whenever possible. *See, e.g., Spiegel v. H. Allen Homes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002) ("Settlement agreements are favored as a means to conserve judicial resources. Courts will enforce them when it is possible to do so.") (internal citation omitted). "The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement." *Id.* (internal citation omitted). "To compel enforcement of a settlement agreement, its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Id.* (internal citation omitted).

However, "[a]lthough settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable." *Schlosser v. Perez*, 832 So. 2d 179, 182 (Fla. 2d DCA 2002) (internal citations omitted). Indeed, "[p]reliminary negotiations or tentative and incomplete agreements will not establish a sufficient meeting of the minds to create an enforceable settlement agreement." *Williams v. Ingram*, 605 So. 2d 890, 893 (Fla. 1st DCA 1992) (internal citation omitted). Nor is an agreement considered final "where the record establishes that it is the intent of the parties that further action be taken prior to the completion of a binding agreement." *Id.* (internal citation omitted).

As outlined in the background section above, Defendants, the parties who filed the motion to enforce the settlement agreement, have violated **many** of the Undersigned's Orders in this case. Marine Tech, a corporation, is not represented by counsel, and Purcell has not indicated, one way or the other, whether he has obtained new counsel or is proceeding *pro se*. Furthermore, there is no executed settlement agreement filed on the record. Instead, all that is filed are settlement agreement drafts and settlement negotiation emails that were exchanged between counsel. [ECF No. 85, pp. 20-22]. Indeed, both parties admit that no settlement agreement was ever signed. [ECF Nos. 85, pp. 4-29; 114, p. 2].

In addition, the record shows that all parties have agreed that a condition precedent to the settlement agreement has not been met. [ECF No. 85; 114]. Plaintiff states in its verified response that Defendants' former counsel informed him that Defendants would not sign the settlement agreement until there was a return of the rods and reels. [ECF No. 114, pp. 1, 6]. In an email sent from defense counsel to Plaintiff's counsel, dated October 17, 2016, Mr. Wallace wrote "[a]s I informed [Plaintiff's counsel's] assistant David, [I] will come to your office myself Thursday morning, October 20, between 9 and 9:30 to pick up the fishing gear and **effectuate** the settlement." [ECF No. 114, p. 17 (emphasis added)]. In their motion to enforce the settlement agreement, Defendants argue that after defense counsel made the pick-up,

certain rods were missing and certain reels received were not up to par. [ECF No. 85, p. 3].

Because defense counsel has stated both that the exchange of the rods and reels were a condition precedent to Defendants' signing and effectuating the settlement agreement, and that the rods and reels were not properly exchanged, under Florida law, there is no settlement agreement for this Court to enforce. Accordingly, the Undersigned finds that the record establishes that a further action, the proper exchange of the reels and rods, was required before a binding agreement was completed. *Williams*, 605 So. 2d at 893. Thus, the Undersigned recommends that Judge Martinez **deny** Defendants' motion.

Default against Marine Tech as Sanctions

The Undersigned also recommends that Judge Martinez enter a default against Marine Tech because a corporation cannot appear *pro se* under Florida law and defense counsel has withdrawn from this case. *Punta Gorda Pines Dev., Inc. v. Slack Excavating, Inc.*, 468 So. 2d 438, 439 (Fla. 5th DCA 1985) ("A corporation must be represented by an attorney when it appears in the courts of the State of Florida.) (citing *Quinn v. Hous. Auth. of Orlando,* 385 So. 2d 1167 (Fla. 5th DCA 1980); *Nicholson Supply Co. v. First Fed. Savs. & Loan Ass'n,* 184 So. 2d 438 (Fla. 2d DCA 1966)).

The Eleventh Circuit permits a district court to default a corporate defendant under Federal Rule of Civil Procedure 55 for violating a district court's order to retain new counsel after the district court permitted its former counsel to withdraw. *Compania Interamericana Export, Import, S.A., v. Compania Dominicana de Avaiacion*, 88 F.3d 948, 951-52 (11th Cir. 1996). Indeed, the district courts in this Circuit have followed suit and routinely enter defaults against defendant corporations as a sanction for their failure to obtain counsel. *See, e.g., Kaplun v. Lipton*, No. 06–20327–CIV, 2007 WL 707383, at *1 (S.D. Fla. Mar. 5, 2007) (entering default judgment against corporate defendant for failure to obtain counsel per court order); *Tumi v. Wally's Waterfront, Inc.*, No. 2:05–cv–551–FtM–29SPC, 2007 WL 678013, at *1 (M.D. Fla. Mar. 5, 2007) (finding entry of default judgment appropriate after corporate defendant failed to obtain counsel as directed by court).

The Undersigned gave Marine Tech ample opportunity to comply with the Undersigned's Orders, and as of the date of this Report, Marine Tech remains in noncompliance. Therefore, the Undersigned finds that the record establishes that Marine Tech's lack of compliance is constructively willful, and thus a default is an appropriate sanction. *See Citadel Commerce Corp. v. Cook Sys., Inc.*, No. 8:08CV1923T33TGW, 2009 WL 1515736, at *1 (M.D. Fla. June 1, 2009) ("This Court need not inquire into [corporate defendant's] subjective intent. Default is appropriate because [corporate defendant]'s objective actions are constructively willful.").

Alternatively, the Undersigned also recommends that Judge Martinez, under his inherent authority, find that Marine Tech is not permitted to proceed in this case because it failed to respond to numerous Court orders seeking clarification as to its representative status. *Barash v. Kates*, 585 F. Supp. 2d 1347, 1361 (S.D. Fla. 2006) (finding that court may impose sanctions against a party that violates a court order based on the Court's inherent authority).

Accordingly, the Undersigned **respectfully recommends** that the District Court **deny** Defendants' motion and enter a **default** against Marine Tech.

### III. OBJECTIONS

The parties will have ten (10) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within ten (10) days of the objection.[1] Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest

---

[1] The Undersigned is shortening the time for the objections and responses because Judge Martinez must enter an Order on this Report before he can rule on the other pending motions on the docket, e.g., the motion for default judgment.

of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on August 8, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
Honorable Jose E. Martinez
All Counsel of Record